NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CRAIG FRANCIS SZEMPLE, | : | |
| | : | Civil Action No. 10-258 (DMC) |
| Plaintiff, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| UMDNJ, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Craig Francis Szemple, Pro Se
263906
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

**CAVANAUGH**, District Judge

Plaintiff, Craig Francis Szemple, currently confined at the New Jersey State Prison, Trenton, New Jersey, has submitted this civil complaint which alleges violations of his constitutional rights, and seeks damages pursuant to 42 U.S.C. § 1983. Plaintiff has paid the filing fee.

At this time, the Court must review the complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915A. For

the following reasons, the complaint will be dismissed, without prejudice.

## BACKGROUND

Plaintiff seeks to sue various medical staff at numerous Department of Corrections facilities throughout New Jersey concerning his medical care.

In what amounts to a narrative of his medical history, Plaintiff asserts that in September of 2009, he went to the dental clinic to have a tooth extracted, after having consulted with various oral surgeons and the dental director for New Jersey correctional system (Complt., ¶¶ 38, 39). Plaintiff states that the extraction turned into a "dental fiasco of tremendous proportions." The dentist who had conducted the surgery apologized to Plaintiff for causing him so much pain, and prescribed him a pain killer. (Complt., ¶ 39).

After the surgery on his way back to his cell, Plaintiff was bleeding profusely and was told by officers to go back to the medical clinic immediately. The officers wrote him an emergency medical pass. He was seen at the clinic and sent back to his wing again. Plaintiff was still bleeding, and had to spit blood into a cup. (Complt. ¶ 40).

Plaintiff was seen by Dr. Ahsan, who examined him and had a nurse call 911 for an ambulance. Plaintiff was taken to the hospital, St. Francis Medical Center. During his four hour wait

2

he was attended to twice, and then saw a doctor.  He was very
uncomfortable, bleeding and overheating, and suffering from chest
pains during his visit.  He was seen by several residents and
doctors, but asserts that he did not receive a "thorough
examination."  (Complt., ¶¶ 41-44).

Plaintiff states that during his stay at the hospital the
guards taunted him.  He was given a platelet transfusion which
stopped the bleeding.  Plaintiff wanted to be transferred to
another hospital and to see a specialist.  He complains about the
strain on his heart during his ordeal and his exposure to a blood
transfusion.  He claims that the defendants were deliberately
indifferent to him because he would have bled to death in the
institution.  (Complt., ¶¶ 45-49).

After he was stabilized at the St. Francis Emergency Room,
Plaintiff was sent back to the prison 4 hours later.  He complains
that he was not seen by a doctor or examined before being released
back to prison.  Orders from the ER were not followed once
Plaintiff came back to prison.  Instead, Plaintiff was "ushered
back in front of the very doctor who committed the atrocity on me
the day before."  He describes that the doctor examined him, but
then says that the examination was not thorough.  (Complt., ¶ 50).

Plaintiff states that over the next ten days in his housing
wing, he "received nothing that was ordered by the doctors at St.
Francis Hospital which lead to another catastrophe which almost

3

had a fatal result."  He asserts that he woke up sick and sweaty.
His cell mate called the guards and Plaintiff was sent to medical
by way of a medical alarm.  He was examined an an EKG was done,
and he was told he was fine.  He was placed into a cell in the
infirmary.  Fifteen minutes later he got up to use the toilet and
must have passed out, causing a gash in his head.  He was seen by
an inmate porter who called the nurse, and "before long, [he] had
20 people in this cell," wondering what happened.  He was sent
back to the hospital.  (Complt., ¶¶ 46-47).

At the hospital Plaintiff had blood transfusions, cat scans,
stitches for his head.  Plaintiff asserts that before he fell, he
was wearing the wrong dosage of a medication patch.  Plaintiff has
not seen a neurologist after his fall where he hit his head,
although he claims his condition worsened.  (Complt., ¶ 48).

Plaintiff notes he spent 4 ½ days in intensive care at the
hospital and was given 14 blood transfusions.  He was also given
an endoscopy.  He states that the stress of the bleeding after the
dental incident, and the medication overdose, caused his body to
react as it did.  (Complt., ¶ 49).

When Plaintiff returned to prison, he was held in the "MCU
unit" under emergency housing.  He states that he was there for 60
days without his property, and without communication from his
family.  He argues that the confinement made his condition worse

4

and was "obviously a ploy to intimidate the plaintiff from filing this complaint with the court." (Complt., ¶ 52).

In essence, Plaintiff asserts that his constitutional rights were violated by the 34 named defendants because they were deliberately indifferent to him in that they did not provide him the medical care he deemed necessary, they gave him a disciplinary infraction for "failure to follow safety or sanitation regulations" for bleeding on the floor (Complt., ¶ 52), and because he feels that his medical needs and declining health were ignored.

### DISCUSSION

A.   Standard of Review

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915A, because plaintiff is a prisoner.

5

Recently, the Supreme Court refined this standard for summary

dismissal of a complaint that fails to state a claim in Ashcroft

v. Iqbal, 129 S. Ct. 1937 (2009).  The Court examined Rule 8(a)(2)

of the Federal Rules of Civil Procedure which provides that a

complaint must contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).[1]  Citing its recent opinion in Bell Atlantic Corp. v.

Twombly, 550 U.S. 544 (2007), for the proposition that "[a]

pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do,'"

Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the

Supreme Court identified two working principles underlying the

failure to state a claim standard:

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to legal
> conclusions.  Threadbare recitals of the elements of a cause
> of action, supported by mere conclusory statements, do not
> suffice ... .  Rule 8 ... does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for
> relief will ... be a context-specific task that requires the
> reviewing court to draw on its judicial experience and common
> sense.  But where the well-pleaded facts do not permit the
> court to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not "show[n]"-"that the
> pleader is entitled to relief."  Fed. Rule Civ. Proc.
> 8(a)(2).

_____

[1] Rule 8(d)(1) provides that "[e]ach allegation must be
simple, concise, and direct.  No technical form is required." Fed.
R. Civ. P. 8(d).

Iqbal, 129 S. Ct. at 1949-1950 (citations omitted).  The Court

further explained that:

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausible give rise to an entitlement to relief.

Id. at 1950.

Thus, to prevent a summary dismissal, a civil complaint must

now allege "sufficient factual matter" to show that the claim is

facially plausible.  This then "allows the court to draw the

reasonable inference that the defendant is liable for the

misconduct alleged.  See id. at 1948.  The Supreme Court's ruling

in Iqbal emphasizes that a plaintiff must demonstrate that the

allegations of his complaint is plausible.  See id. at 1949-50;

see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC

Shadyside, 578 F.3d 203, 2009 WL 2501662, *4 (3d Cir., Aug. 18,

2009).

Consequently, the Third Circuit observed that Iqbal provides

the "final nail-in-the-coffin" for the "no set of facts" standard

set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that

---

[2] In Conley, as stated above, a district court was permitted
to summarily dismiss a complaint for failure to state a claim only
if "it appear[ed] beyond doubt that the plaintiff can prove no set
of facts in support of his claim which would entitle him to
relief."  Conley, 355 U.S. at 45-46.  Under this "no set of facts"
standard, a complaint could effectively survive a motion to

applied to federal complaints before <u>Twombly</u>.  <u>See</u> <u>Fowler</u>, 2009 WL

2501662 at *5.  Now, after <u>Iqbal</u>, the Third Circuit requires that

a district court must conduct the two-part analysis set forth in

<u>Iqbal</u> when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be
> separated.  The District Court must accept all of the
> complaint's well-pleaded facts as true, but may disregard any
> legal conclusions. [<u>Iqbal</u>, 129 S. Ct. at 1949-50].  Second, a
> District Court must then determine whether the facts alleged
> in the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief." [<u>Id.</u>]  In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to "show" such an
> entitlement with its facts.  <u>See</u> <u>Phillips</u>, 515 F.3d at 234-
> 35.  As the Supreme Court instructed in <u>Iqbal</u>, "[w]here the
> well-pleaded facts do not permit the court to infer more than
> the mere possibility of misconduct, the complaint has
> alleged-but it has not 'show [n]'-'that the pleader is
> entitled to relief.'" <u>Iqbal</u>, [129 S. Ct. at 1949-50].  This
> "plausibility" determination will be "a context-specific task
> that requires the reviewing court to draw on its judicial
> experience and common sense." <u>Id</u>.

<u>Fowler</u>, 2009 WL 2501662, *5.

This Court is mindful, however, that the sufficiency of this

<u>pro</u> <u>se</u> pleading must be construed liberally in favor of Plaintiff,

even after <u>Iqbal</u>.  See <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007).

Moreover, a court should not dismiss a complaint with prejudice

for failure to state a claim without granting leave to amend,

unless it finds bad faith, undue delay, prejudice or futility. <u>See</u>

<u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 110-111 (3d Cir.

2002); <u>Shane v. Fauver</u>, 213 F.3d 113, 117 (3d Cir. 2000).

---

dismiss so long as it contained a bare recitation of the claim's
legal elements.

B.   **Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C.

§ 1983 for certain violations of his or her constitutional rights.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff

must demonstrate that the challenged conduct was committed by (1)

a person acting under color of state law and (2) that the conduct

deprived him of rights, privileges, or immunities secured by the

Constitution or laws of the United States.  See Parratt v. Taylor,

451 U.S. 527, 535 (1981), overruled in part on other grounds by

Daniels v. Williams, 474 U.S. 327 (1986); Adickes v. S.H. Kress &

Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d

1250, 1255-56 (3d Cir. 1994).

C.   **Medical Care Claim**

In this case, Plaintiff alleges that he has not received

proper medical care, in violation of his constitutional rights.

The Eighth Amendment proscription against cruel and unusual

punishment also requires that prison officials provide inmates

with adequate medical care.  See Estelle v. Gamble, 429 U.S. 97,

103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  In

9

order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege:  (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss."  Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to

10

his serious medical need.  See Natale, 318 F.3d at 582 (finding

deliberate indifference requires proof that the official knew of

and disregarded an excessive risk to inmate health or safety).

"Deliberate indifference" is more than mere malpractice or

negligence; it is a state of mind equivalent to reckless disregard

of a known risk of harm.  See Farmer v. Brennan, 511 U.S. 825,

837-38 (1994).  Furthermore, a prisoner's subjective

dissatisfaction with his medical care does not in itself indicate

deliberate indifference.  See Andrews v. Camden County, 95 F.

Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp.

137, 145 (D. Md. 1982), aff'd , 729 F.2d 1453 (4th Cir. 1984).

Similarly, "mere disagreements over medical judgment do not state

Eighth Amendment claims."  White v. Napoleon, 897 F.2d 103, 110

(3d Cir. 1990).  "Courts will disavow any attempt to second-guess

the propriety or adequacy of a particular course of treatment ...

[which] remains a question of sound professional judgment."

Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d

Cir. 1979) (internal quotation and citation omitted).  Even if a

doctor's judgment concerning the proper course of a prisoner's

treatment ultimately is shown to be mistaken, at most what would

be proved is medical malpractice and not an Eighth Amendment

violation.  See Estelle, 429 U.S. at 105-06; White, 897 F.3d at

110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. See Rouse, 182 F.3d at 197.

In this case, while it is safe to assume that Plaintiff's medical need was "serious," Plaintiff has not alleged facts indicating deliberate indifference on the part of the defendants. Plaintiff's complaint is replete with instances of the medical care provided him during his ordeal. He was repeatedly seen by doctors and nurses, was treated at least twice in the hospital, was medicated, was placed in the medical unit of the prison, and was attended to on numerous occasions due to his medical conditions. While Plaintiff may not have been comfortable during the experience, may have felt he could have received better care, may think that the doctors and nurses were not providing him with exceptional treatment, or even that they made errors in judgment concerning his treatment, Plaintiff has not asserted any facts that rise to the level of deliberate indifference. At most, Plaintiff may have pleaded a case of medical malpractice, that does not warrant relief under § 1983.

As stated above, the Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's

12

need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment.  In this case, Plaintiff was not intentionally refused medical treatment; Plaintiff's medical treatment was not delayed; and Plaintiff was not prevented from receiving needed or recommended treatment.

Therefore, the complaint must be dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted.  However, the dismissal will be without prejudice to Plaintiff filing a motion to reopen and submitting an amended complaint, in accordance with the attached order, that addresses the deficiencies as outlined above.  In his amended complaint, Plaintiff must allege facts indicating deliberate indifference by each defendant, not just use the term "deliberately indifferent" as a legal conclusion, as he does in this complaint.

### CONCLUSION

For the reasons set forth above, Plaintiff's complaint will be dismissed, without prejudice, for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915A(b)(1). An appropriate order accompanies this opinion.

DENNIS M. CAVANAUGH
United States District Judge

Dated: 10/14/10

13