## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **CRAIG FRANCIS SZEMPLE,** | : | Civ. No. 10-258 (KM) |
| **Plaintiff,** | : | |
| **v.** | : | |
| **UNIVERSITY OF MEDICINE AND** | : | **OPINION** |
| **DENTISTRY OF NEW JERSEY,** | : | |
| ***et al.,*** | : | |
| **Defendants.** | : | |

**MCNULTY, U.S.D.J.**

## I.    INTRODUCTION

Plaintiff Craig Francis Szemple, while an inmate at the New Jersey State Prison in Trenton, developed a dental problem.[1] Dr. Charles Getzoff, D.D.S., an oral surgeon, performed a tooth extraction at the prison medical clinic. Szemple alleges that Dr. Getzoff broke a filling, severed nerves, and cut a major blood vessel under the tongue. Afterward, bleeding continued, and Szemple lost some 1.5 liters of blood. He required hospitalization and transfusions, and suffered other medical consequences.

In 2010, Szemple brought this action alleging, *inter alia*, state law claims of dental malpractice.[2] Among the named defendants are Dr. Getzoff, the University of Medicine and Dentistry of New Jersey ("UMDNJ", now part of Rutgers), and University Correctional Healthcare ("UCH"). Those Defendants

---

[1]    These facts, taken from the allegations of the Complaint, have not been tested by any fact finder. They are stated simply to set out the nature of Szemple's claims for purposes of this motion.

[2]    Szemple filed the action *pro se*. District Judge Dennis M. Cavanaugh, now retired, authorized appointment of *pro bono* counsel in October 2013. Counsel was actually appointed on April 16, 2014, the same day the case was reassigned to me. Dr. Richard Mann, one of the defendants/movants here, was voluntarily dismissed from the action. (ECF No. 97)

have moved to dismiss the complaint.[3] They contend that Szemple has not served a timely, proper Affidavit of Merit ("AOM").

Defendants brought their motion as one to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6). An AOM, however, is not strictly speaking an element of a claim. In addition, the defendants' motion attaches exhibits and affidavits extraneous to the pleadings. (ECF Nos. 84, 85) I therefore invoked my discretion under FED. R. CIV. P. 12(d) to convert the motion to one for summary judgment. (*See* Memorandum and Order, ECF No. 99, citing *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. Withum Smith Brown, P.C.*, 692 F.3d 283, 303 n.13 (3d Cir. 2012)). Because Szemple did not have fair warning that he was in jeopardy of summary judgment, I gave him 14 days to submit any additional proofs. He opted not to do so. (ECF No. 100) In the end, however, it matters little; as plaintiff's counsel implies, *id.*, the issue is predominantly one of law, based on matters of procedural history.

## II.   DISCUSSION

In an action alleging professional malpractice, New Jersey requires an Affidavit of Merit ("AOM"). *See* the Affidavit of Merit Statute ("AMS"), N.J. Stat. Ann. §§ 2A:53A-26 to 29.[4] Within 120 days after the defendant files an answer, the malpractice plaintiff must file such an affidavit from an appropriate licensed professional. That AOM must state, to a reasonable probability, that the defendant's conduct fell short of accepted standards in the relevant profession. If a proper, timely AOM is not filed, the case will be dismissed.

---

[3]      "Defendants", in this opinion, refers to the movants only. Defendants' moving brief (ECF No. 84) is cited as "DBr"; the plaintiff's response (ECF No. 85) as "PBr"; and Defendants' reply (ECF No. 86) as "DRep".

[4]      A federal court must apply the AOM requirement to malpractice claims under New Jersey law, whether under diversity jurisdiction or the Federal Tort Claims Act. *See Kindig v. Gooberman*, 149 F. Supp. 2d 159, 163 (D.N.J. 2001) (diversity; citing *Chamberlain v. Giampapa*, 210 F.3d 154, 157 (3d Cir. 2000)); *Fontanez v. United States*, 24 F. Supp. 3d 408, 411 (D.N.J. 2014) (Donio, U.S.M.J.) (FTCA case; citing *Staub v. United States*, No. 08-2061, 2010 WL 743926, at *2 (D.N.J. Mar. 3, 2010)). *A fortiori*, it applies to state law claims brought in their own right, pursuant to the Court's supplemental jurisdiction. 28 U.S.C. § 1367.

Here, the claim is one of dental malpractice. It is brought against, among others, Dr. Getzoff, who is a dentist specializing in oral surgery. The plaintiff, Szemple, filed and served an AOM on November 5, 2014. (ECF No. 79) That AOM, signed by Dr. Martin Giniger, DMD, MsD, PhD, FICD, states that there is "a reasonable probability that the skill, care, and knowledge exercised by the dental (and other) professional defendants during Mr. Szemple's tooth extraction and thereafter, fell below the accepted professional standard of care." *Id.*

### A.    The AOM statutory scheme

The requirement of an AOM is intended to screen out meritless malpractice claims:

> The core purpose underlying the [AMS] is to require plaintiffs ... to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of litigation. Importantly, there is no legislative interest in barring meritorious claims brought in good faith. Indeed, [t]he legislative purpose was not to create a minefield of hyper-technicalities in order to doom innocent litigants possessing meritorious claims.

*Ryan v. Renny,* 999 A.2d 427, 435–36 (N.J. 2010) (internal quotations and citations omitted).

The AMS sets forth the basic AOM requirement as follows:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

N.J. Stat. Ann. § 2A:53A-27. A plaintiff's failure to file an AOM from an appropriate licensed person, unless excused by extraordinary circumstances, is

grounds for dismissal of the complaint with prejudice. *See* N.J. Stat. Ann. §
2A:53A-29; *Palanque v. Lambert Wooley,* 774 A.2d 501, 505 (N.J. 2001).

The AMS defines the class of cases in which an AOM must be filed. An
AOM is required, not just in medical cases, but in "all actions for damages
based on professional malpractice," *Ryan,* 999 A.2d at 435, brought against "a
licensed person in his profession or occupation," N.J. Stat. Ann. § 2A:53A-27.
The AMS specifies sixteen such professions and occupations.[5] As relevant here,
a covered professional includes "a dentist licensed under [N.J. Stat. Ann. §]
45:6-1" as well as "a health care facility." N.J. Stat. Ann. § 2A:53A-26.
Business organizations of licensed professionals are likewise covered. *See*

---

[5] More specifically, the AMS defines licensed professionals by means of a list:
"Licensed person" defined

As used in this act, "licensed person" means any person who is licensed as:

a. an accountant pursuant to [N.J. Stat. Ann. § 45:2B–42 to –75];

b. an architect pursuant to [N.J. Stat. Ann. § 45:3–1 to –46];

c. an attorney admitted to practice law in New Jersey;

d. **a dentist** pursuant to [N.J. Stat. Ann. § 45:6–1 to –73];

e. an engineer pursuant to [N.J. Stat. Ann. § 45:8–27 to –60];

f. **a physician** in the practice of medicine or surgery pursuant to [N.J. Stat.
Ann. § 45:9–1 to –58];

g. a podiatrist pursuant to [N.J. Stat. Ann. § 45:5–1 to –20];

h. a chiropractor pursuant to [N.J. Stat. Ann. § 45:9–41.17 to –32];

i. a registered professional nurse pursuant to [N.J. Stat. Ann. § 45:11–23 to –
67];

j. **a health care facility** as defined in [N.J. Stat. Ann. § 26:2H–2];

k. a physical therapist pursuant to [N.J. Stat. Ann. § 45:9–37.11 to –37.34f];

l. a land surveyor pursuant to [N.J. Stat. Ann. § 45:8–27 to –60];

m. a registered pharmacist pursuant to [N.J. Stat. Ann. § 45:14–40 to –82];

n. a veterinarian pursuant to [N.J. Stat. Ann. § 45:16–1 to –18];

o. an insurance producer pursuant to [N.J. Stat. Ann. § 17:22A–26 to –57]; and

p. a certified midwife, certified professional midwife, or certified nurse midwife
pursuant to [N.J. Stat. Ann. § 45:10–1 to –22].

N.J. Stat. Ann. § 2A:53A–26 (emphasis added).

4

*Martin v. Perinni Corp.*, 37 F. Supp. 2d 362, 366 (D.N.J. 1999).

The AMS imposes time limits. The AOM must be filed within 60 days after the filing of the defendant's answer. The court, on a showing of good cause, may extend that deadline for an additional 60 days. N.J. Stat. Ann. § 2A:53A-27.

The AMS also states who is qualified to be an affiant on an AOM. For that purpose, N.J. Stat. Ann. § 2A:53A-27 draws a distinction between medical malpractice cases and others:

> *In the case of an action for medical malpractice*, the person executing the affidavit shall meet the requirements of a person who provides expert testimony or executes an affidavit as set forth in section 7 of P.L.2004, c.17 [N.J. Stat. Ann. § 2A:53A-41].
>
> *In all other cases*, the person executing the affidavit shall be licensed in this or any other state; have particular expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years [*sic* in original].

N.J. Stat. Ann. § 2A:53A-27 (emphasis and paragraph break added for clarity).

As to medical malpractice cases, then, § 2A:53A-27 incorporates by reference a separate statute. That statute, N.J. Stat. Ann. § 2A:53A-41, sets a high standard of eligibility to be an AOM affiant:

> *In an action alleging medical malpractice*, a person shall not give expert testimony or execute an affidavit pursuant to the provisions of P.L.1995, c. 139 [N.J. Stat. Ann. § 2A:53A-26 *et seq.*] on the appropriate standard of practice or care unless the person is licensed as a physician or other health care professional in the United States and meets the following criteria:
>
> a. If the party against whom or on whose behalf the testimony is offered is a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association and the care or treatment at issue involves that specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association, the person providing the testimony shall have specialized at the time of the occurrence that is the basis for the action in the same specialty or subspecialty, recognized by the American Board of Medical Specialties or the American Osteopathic Association, as the party

against whom or on whose behalf the testimony is offered, and if the person against whom or on whose behalf the testimony is being offered is board certified and the care or treatment at issue involves that board specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association, the expert witness shall be:

(1) a physician credentialed by a hospital to treat patients for the medical condition, or to perform the procedure, that is the basis for the claim or action; or

(2) a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association who is board certified in the same specialty or subspecialty, recognized by the American Board of Medical Specialties or the American Osteopathic Association, and during the year immediately preceding the date of the occurrence that is the basis for the claim or action, shall have devoted a majority of his professional time to either:

(a) the active clinical practice of the same health care profession in which the defendant is licensed, and, if the defendant is a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association, the active clinical practice of that specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association; or

(b) the instruction of students in an accredited medical school, other accredited health professional school or accredited residency or clinical research program in the same health care profession in which the defendant is licensed, and, if that party is a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association, an accredited medical school, health professional school or accredited residency or clinical research program in the same specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association; or

(c) both.

N.J. Stat. Ann. § 2A:53A-41 (emphasis added).

For *non*-medical malpractice cases, however, N.J. Stat. Ann. § 2A:53A-27 retains its own standard. The AOM affiant must be appropriately licensed, and must have particular expertise in the general area or specialty involved in the

action, as evidenced by board certification or five years' relevant experience. *Id.*

From now on I will refer to those two statutes, N.J. Stat. Ann. §§ 2A:53A-27 and 2A:53A-41, as "Section 27" and "Section 41."

### B.    Timeliness

Defendants' motion claims that Dr. Giniger's AOM was not timely, and that the complaint must therefore be dismissed. They press that argument with less force in their reply. They continue to stress, however, that if Dr. Giniger's AOM is found inadequate, the statutory deadline of 60 or 120 days implies that it is now too late to submit another. I find that the original AOM was filed timely. And because I find that the AOM is legally adequate (*see* Section II.C, *infra*), the hypothetical timeliness of a resubmitted AOM does not arise as an issue.

First, I find that the deadline is 120 days, not 60. As noted above, Section 27 imposes a deadline of 60 days from the filing of defendant's answer, but provides that the deadline may be extended an additional 60 days for good cause. There are no rigorous procedural prerequisites to such an extension: "The New Jersey Supreme Court has held that a plaintiff is *not* required to file a motion for an extension for 'good cause' within the original 60-day period in order to gain an additional 60 days within which to file the required affidavit of merit." *See Costa v. Cnty. of Burlington,* 566 F. Supp. 2d 360, 362 (D.N.J. 2008) (citing *Burns v. Belafsky,* 166 N.J. 466, 766 A.2d 1095, 1100-01 (2001)).

The "good cause" threshold, moreover, is low; counsel's inadvertence is enough. The key issue is whether "demonstrable prejudice" would flow from a 60-day extension:

> [I]nadvertence of counsel may justly be deemed to constitute good cause where the delay does not prejudice the adverse party and a rational application under the circumstances present favors a determination that provides justice to the litigant. [*Martindell v. Martindell,* 21 N.J. 341, 122 A.2d 352 (1956)]. Absent demonstrable prejudice, "it is neither necessary nor proper to visit the sins of the attorney upon his [or her] blameless client." *Jansson v. Fairleigh Dickinson Univ.,* 198 N.J. Super. 190, 196, 486 A.2d 920 (App. Div. 1985); *see also Parker v. Marcus,* 281 N.J.

Super. 589, 594, 658 A.2d 1326 (App. Div. 1995).

*Burns,* 766 A.2d at 477–78 (quoting Appellate Division decision below, 741 A.2d at 654; bracketed material in original). The AOM is not a device to bar stale claims, but to screen meritless ones. Particularly where prejudice is lacking and a claim is meritorious, attorney inadvertence should not bar application of the 60-day extension. *Id.*

I find sufficient cause to extend the deadline an additional 60 days, for a total of 120 days. First, Defendants have not established any prejudice that accrued by November 2014 as a result of the 60-day extension. This action, although four years old, had been pursued *pro se* and had not progressed substantially. (A trip up and down the appellate ladder added some delay.) Second, *pro bono* counsel for plaintiff had been appointed relatively recently. They had to familiarize themselves with an ongoing case and deal with the legacy effects of the plaintiff's unfamiliarity with legal procedures. Third, as outlined below, there is at least an ambiguity in the statute as to whether the deadline runs from each defendant's answer, or from the time that all defendants have jointly answered. If plaintiff's counsel erred—and, as established below, I do not believe they did—their inadvertence should not be visited on the client. Fourth, this case did not enjoy the clarifying effect of two state procedures that are intended to guard against the severe consequences of failure to file an AOM:

> Aware of this harsh consequence, the New Jersey Supreme Court instituted two safeguards to aid plaintiffs in complying with the AOM Statute. First, it directed that New Jersey's Civil Case Information Sheet be amended to contain the question, "IS THIS A PROFESSIONAL MALPRACTICE CASE?," and boxes to check "YES" or "NO." Underneath the question is the following sentence: "IF YOU HAVE CHECKED 'YES,' SEE N.J.S.A. 2A:53A27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT." *See Burns v. Belafsky,* 166 N.J. 466, 766 A.2d 1095, 1101 (2001).

> Second, the New Jersey Supreme Court required that an accelerated case management conference be held within 90 days of the service of the answer in all malpractice actions. *See Ferreira v.*

> *Rancocas Orthopedic Assocs.,* 178 N.J. 144, 836 A.2d 779, 785
> (2003). At this conference, if the plaintiff has not filed an affidavit,
> the trial court is to remind it of the requirement. *Id.*

*Nuveen,* 692 F.3d at 291. Those state-law procedural safeguards do not apply in federal court. *Id.* at 304–05. Nevertheless, I consider their absence as an additional factor tending to excuse any inadvertence and support a grant of the "good cause" 60-day extension.

The good cause extension is granted; the deadline, is 120, not 60, "days following the date of filing of the answer to the complaint by the defendant." *See* Section 27.

From what date does the 120-day period run? The relevant defendants jointly have filed serial amended answers—five in all—to the First Amended Complaint. The first answer on behalf of Dr. Getzoff (the Second Amended Answer, ECF No. 69) was filed on July 17, 2014. A Third Amended Answer followed quickly, and the Fourth Amended Answer filed on behalf of Dr. Getzoff and others on August 15, 2014.[6] (*See* ECF No. 75) That was the operative answer at the time the plaintiff filed Dr. Giniger's AOM on November 5, 2014.

There is no case law that deals with precisely this procedural configuration. To me, however, the liberal spirit of the case law suggests that the 120 day deadline should run from the filing of the Fourth Amended Answer. *See, e.g., Costa,* 566 F. Supp. 2d at 562-63 ("Dr. Evans's Answer to the second Amended Complaint, which is *presently* the answer to the final amended complaint, was filed on May 30, 2008. Therefore, Costa has at least 120 days from that date to file an appropriate affidavit of merit before this Court may consider any motion to dismiss filed by Dr. Evans.") (emphasis added). *Cf. Snyder v. Pascack Valley Hosp.,* 303 F.3d 271, 276 (3d Cir. 2002) (AOM deadline runs from defendant's answer to the amended complaint, not from his answer to the original complaint, even though the amended complaint

---

[6]     Defendants filed a Fifth Amended Answer to the Amended Complaint on January 19, 2016. (*See* ECF No. 106)

did not change the allegations against him in particular). I am inclined to think that the relevant Answer is the one currently in effect when the AOM is filed. An amended pleading supersedes what went before. To require an AOM before the pleadings are finally settled would result in uncertainty, as well as needless duplication of effort as AOMs must be revised to conform to new allegations. A plaintiff should not be placed in the position of guessing how "new" a "new" amended joint answer is (or will be, once it is filed) as to each individual defendant.[7] A deadline that places plaintiff in jeopardy of default must be clearer than that.

I therefore count the 120 day period from the filing of the Fourth Amended Answer on August 15, 2014. So reckoned, the deadline fell on December 13, 2014. The AOM, filed on November 5, 2014, was therefore timely. (And the AOM was filed *before* the filing of a Fifth Amended Answer on January 19, 2016.)

In the end, however, the correctness or not of my interpretation is not critical. The very first answer filed on behalf of Dr. Getzoff was the Second Amended Answer, filed on July 17, 2014. Even counting from that date, the 120 day deadline would have expired on November 14, 2014. On that alternative calculation, the filing of Dr. Giniger's AOM on November 5, 2014, was still well within the 120 day deadline.[8]

---

[7]    Defendants stress that anything new in the Fourth Amended Answer did not relate to Dr. Getzoff personally. But even the very first answer filed on behalf of Getzoff (*i.e.,* the Second Amended Answer, ECF No. 69) was filed on July 17, 2014—still within the 120-day window.

[8]    UMDNJ and UCH are also movants here. The first answer filed on their behalf was the First Amended Answer. (ECF No. 54) It was filed on November 21, 2013, outside the 120-day window for filing an AOM. Dr. Giniger's AOM, however, does not name those defendants. Nor is it clear that they are even accused of a breach of professional dental standards. In their reply brief, Defendants narrow the issue: they clarify that they seek dismissal only as to "negligence claims as to [UMDNJ] and UCH with regard to vicarious liability claims for Dr. Getzoff's actions. If this Court finds that Dr. Giniger is not qualified to author an Affidavit of Merit as to Dr. Getzoff, it would be illogical and in conflict with the purposes of the Affidavit of Merit Statute to allow the same claims to proceed through vicarious liability principles." DRep at 9. I take that as an acknowledgement that defendants seek dismissal of the vicarious claims against

I therefore deny the motion to dismiss to the extent that it rests on the alleged untimeliness of the AOM.

### C.    Eligibility of Dr. Giniger as AOM affiant

Defendants' motion also challenges the substance of the AOM, asserting that Dr. Giniger is not a qualified affiant under Sections 27 and 41, quoted above. They note correctly that Dr. Giniger, a general dentist, does not practice in the same dental specialty as defendant Dr. Getzoff, an oral surgeon. But that disparity, in my view, does not disqualify Dr. Giniger as an affiant.[9]

#### 1. The nonmedical/medical division between Sections 27 and 41

Although both parties focus on Section 41, the proper analysis must begin with the affiant eligibility scheme set out in Section 27, as amended by the Patients First Act of 2004.

As to the standards for eligibility of an AOM affiant, Section 27 imposes a clear division of labor, described in more detail above. In cases of "medical malpractice," Section 27 incorporates by reference the exacting standards of Section 41. "In all other cases" of professional malpractice, Section 27 sets its own, somewhat lower standard.

The significance of that Section 27/Section 41 division of labor lies in the amendment history of the AMS. Section 27 was originally enacted in 1995. At

---

UMDNJ and UCH as a necessary consequence of the dismissal of the claims against Getzoff. I have not dismissed the claims against Dr. Getzoff. In any event, it is Dr. Getzoff's adherence, or not, to professional dental standards that must be the subject of an AOM; the vicarious liability of UMDNJ and UCH does not depend on their skill at dentistry. Hence I do not reach plaintiff's other arguments for the appropriateness or timeliness of the AOM as to UMDNJ and UCH.

[9]     In their original motion papers, the defendants alleged that Dr. Giniger left the active practice of dentistry in 2006, and therefore was not a qualified affiant as of 2009, when the events in suit occurred. (DBr 8) Although Giniger's c.v. recites that he took on corporate responsibilities starting in 2006, it does not state that he left the practice of dentistry; that is an inference drawn by the defendants. The plaintiff's response attaches a declaration of Dr. Giniger in which he clarifies that his active dental practice, encompassing some 30 years, continued through 2009 and continues to the present day. (PBr 10; Giniger affidavit, ECF No. 85-2 ¶4) In their reply, defendants withdrew this portion of their challenge. (DRep 1)

that time, the general Section 27 affiant eligibility standard was the only one, and it applied to all malpractice cases:

> In its original iteration, the statute broadly required that the affidavit be executed by an affiant who was "licensed" and had "expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years[.]" *L.* 1995, *c.* 139, § 2. Under that standard, a physician in one field was qualified to render an opinion with respect to the performance of a physician in another if their practices overlapped. *Burns v. Belafsky,* 166 N.J. 466, 480, 766 A.2d 1095 (2001).

*Ryan,* 999 A.2d at 436.

In 2004, however, the legislature passed the New Jersey Medical Care Access and Responsibility and Patients First Act, *L.* 2004, *c.* 17. The Patients First Act was a so-called "tort reform" package, designed to address the "dramatic escalation in medical malpractice liability insurance premiums." *N.J. State Bar Ass'n v. State,* 902 A.2d 944, 951 (N.J. Super. App. Div.) (quoting preamble to 2004 bill), *certif. denied,* 909 A.2d 726 (2006). The 2004 Patients First Act added Section 41, a more stringent eligibility standard for cases of "medical malpractice":

> In 2004, the Legislature enacted the New Jersey Medical Care Access and Responsibility and Patients First Act ("Act"), *L.* 2004, *c.* 17; *N.J.S.A.* 2A:53A–37 to –42, which modifies the Affidavit of Merit statute and applies to causes of action arising after July 7, 2004....

> The 2004 version provides more detailed standards for a testifying expert and for one who executes an affidavit of merit, generally requiring the challenging expert to be equivalently-qualified to the defendant [quoting Section 41].

*Id. See also Hill Int'l, Inc. v. Atl. City Bd. of Educ.,* 106 A.3d 487, 493 (N.J. Super. App. Div. 2014) (Sabatino, P.J.) (describing, post-2004, the "more stringent specialization requirements imposed for affiants in medical malpractice cases in *N.J.S.A.* 2A:53A–41"), *appeal granted,* 112 A.3d 589, 116 A.3d 1069 (N.J. 2015).

Viewed from a post-2004 perspective, then, Section 27 embodies a

12

vertical division of cases by subject matter: medical vs. non-medical. But viewed from a historical perspective, Section 27 contains horizontal, archaeological layers. Before the 2004 amendments, *all* malpractice actions were subject to the general affiant eligibility standard of Section 27. Post-2004, *non-medical* malpractice cases remain subject to that same Section 27 eligibility standard. *Medical* malpractice cases, however, are now subject to the heightened affiant eligibility standard of Section 41.

### 2. Does Section 41 apply to this case?

A threshold issue, then, is this: Are Szemple's claims of dental malpractice "medical malpractice" claims, subject to the stringent AOM eligibility standard of Section 41? Or are they "other claims," subject to the lesser eligibility standard of Section 27? I hold that this is a dental, not a medical, malpractice case, and that Section 41 therefore does not apply.

To summarize and simplify a bit, Section 41 embodies a "same-specialty" rule, at least for doctors. In a medical malpractice case, where the physician alleged to be at fault practices in a specialty recognized by the American Board of Medical Specialties or the American Osteopathic Association, the plaintiff's AOM affiant must practice in the same specialty. *See Nicholas v. Mynster,* 64 A.3d 536, 539 (N.J. 2013) (Section 41 "requires that plaintiff's medical expert must 'have specialized at the time of the occurrence that is the basis for the [malpractice] action in the same specialty or subspecialty' as defendant physicians"). Thus, under Section 41, "the first inquiry must be whether a physician is a specialist or general practitioner .... The second inquiry must be whether the treatment that is the basis of the malpractice action 'involves' the physician's specialty." *Id.* at 550.

Defendants, citing that same-specialty rule of Section 41, say that Dr. Gininger is not qualified to offer an AOM. (DBr 9) Dr. Getzoff specializes in oral surgery and was acting as an oral surgeon when he treated Mr. Szemple. Oral and Maxillofacial Surgery is a specialty recognized by the American Dental Association. *See* www.ada.org/en/education-careers/careers-in-

13

dentistry/dental-specialties/specialty-definitions (last visited Feb. 7, 2016).
Dr. Giniger, although he is a dentist and may perform tooth extractions, is not
certified in that oral surgery specialty. Defendants acknowledge that this is not
a case alleging malpractice by a physician. Nevertheless, they say, the
heightened same-specialty rule of Section 41 "applie[s] equally to dental
malpractice cases." (DBr 8)

 I start, as always, with the plain wording of the statute, Section 41. It
speaks strictly in terms of "medical," not dental, malpractice. In common
parlance, medicine and dentistry are not considered equivalent. A dentist is not
a physician, and is not required to possess a medical degree. Neither Giniger
nor Getzoff is an M.D., or physician.

 The structure of Section 41 confirms that it does not extend to dentistry.
It requires that the affiant and the defendant practice in the "same specialty or
subspecialty, recognized by the American Board of Medical Specialties or the
American Osteopathic Association."

 Consider the issue from the medical specialty side. Section 41 lists
medical, not dental, specialties and subspecialties. The American Board of
Medical Specialties lists no specialty or subspecialty in Oral or Maxillofacial
Surgery. *See* www.abms.org/member-boards/specialty-subspecialty-
certificates/ (last visited Feb.7, 2016). Likewise, the American Osteopathic
Association recognizes no specialty in oral surgery.
www.osteopathic.org/inside-aoa/development/aoa-board-
certification/Pages/specialty-subspecialty-certification.aspx (last visited Feb. 7,
2016). So a dentist, as such, *could* not practice any of the specialties listed or
referred to in Section 41; to a dentist, Section 41 has no application.

 Or look at the question from the dental specialty side; the result is the
same. Defendants identify Dr. Getzoff's relevant specialty as Oral and
Maxillofacial Surgery, as recognized by the American Dental Association. (DBr
9) Section 41 does not refer to that or any dental specialty. The American
Dental Association, its recognized specialties, and indeed the entire subject of
dentistry, are absent from Section 41.

I must follow the statute's plain language, except in the rare cases where "absurd results" and "'the most extraordinary showing of contrary intentions' justify a limitation on the 'plain meaning' of the statutory language." *First Merchs Acceptance Corp. v. J.C. Bradford & Co.,* 198 F.3d 394, 402 (3d Cir. 1999) (quoting *Garcia v. U.S.,* 469 U.S. 70, 75, 105 S. Ct. 479 (1984)); *see also Thorpe v. Borough of Thorpe,* 770 F.3d 255, 263 (3d Cir. 2014), *cert. denied,* 136 S. Ct. 84 (2015) (denying family members' application for reinterment, holding that broad definition of "museum" in statute concerning return of plundered Native American cultural items will not be applied to include the borough of Jim Thorpe, PA, or the grave where the athlete's remains were buried in accordance with his wife's wishes).

Szemple's reading of Section 41 is not absurd; far from it. The state legislature could rationally have decided to confine Section 41 to the field of medicine. Every other profession is relegated to the general standard of Section 27; it is not anomalous that dentistry should take its place among them. I take judicial notice that medical, not dental, malpractice awards have been a driver of tort reform measures like this one. The preamble to the 2004 Patients First Act is very clear on that point: the problem it seeks to address is formulated explicitly in terms of "doctors," "physicians," "health care," "a dramatic escalation in medical malpractice liability insurance premiums," and the like.[10]

---

[10]    The preamble to the 2004 bill states:

a. One of the most vital interests of the State is to ensure that high-quality health care continues to be available in this State and that the residents of this State continue to have access to a full spectrum of health care providers, including highly trained physicians in all specialties;

b. The State's health care system and its residents' access to health care providers are threatened by a dramatic escalation in medical malpractice liability insurance premiums, which is creating a crisis of affordability in the purchase of necessary liability coverage for our health care providers;

c. One particularly alarming result of rising premiums is that there are increasing reports of doctors retiring or moving to other states where insurance premiums are lower, dropping high-risk patients and

Neither dentistry nor dental malpractice is mentioned. And there are more particular reasons why the heightened "same specialty" standards of Section 41 might have seemed uniquely applicable to the practice of medicine. The human body comprises many complex organs and systems; to deal with them, medical subspecialties have proliferated. But the legislature, assuming it even considered the matter, could have thought that dentistry is already something of a specialty; further subspecialization might not be necessary to effectively discharge the gatekeeping function of an AOM. At any rate, the words of Section 41 are not so at war with its patent purpose that I can disregard the statute's plain meaning.

I turn to the case law. It is sparse and unpublished,[11] and the New Jersey Supreme Court has not spoken on the issue. What case law there is, however, suggests that Section 41 does not apply to claims of dental malpractice.

For example, *Meehan v. Antonellis*, No. L-2205-12, 2014 WL 5800811

---

procedures, and practicing defensive medicine in a manner that may significantly increase the cost of health care for all our citizens;

d. The reasons for the steep increases in the cost of medical malpractice liability insurance are complex and involve issues related to: the State's tort liability system; the State's health care system, which includes issues related to patient safety and medical error reporting; and the State's regulation and requirements concerning medical malpractice liability insurers;

e. It is necessary and appropriate for the State to take meaningful and prompt action to address the various interrelated aspects of these issues that are impacted by, or impact on, the State's health care system; and

f. To that end, this act provides for a comprehensive set of reforms affecting the State's tort liability system, health care system and medical malpractice liability insurance carriers to ensure that health care services continue to be available and accessible to residents of the State and to enhance patient safety at health care facilities.

[L. 2004, c. 17, § 2.]

*N.J. State Bar Ass'n*, 902 A.2d at 951.

[11]    A state rule of court, N.J. Ct. R. 1:36-3, prohibits the citation or use of unpublished decisions as precedent. Lacking any other authority, however, I must take them as at least an indication of the state of the law in New Jersey.

(N.J. Sup. Ct. App. Div. Nov. 10, 2014) (unpublished), *certif. granted*, 221 N.J. 218, 110 A.3d 931 (2015), agrees with the plaintiff as to this narrow point: "We recognize that the Patient First Act's detailed standards for experts executing an AOM pertain to actions alleging medical malpractice and not dental malpractice." *Id.* at *4 (citing Section 41).[12]

*Rab v. Doner*, No. L-9931-07, 2010 WL 2869528 (N.J. Super. Ct. App. Div. July 19, 2010) (unpublished) holds that, while Section 41 "applies to medical specialists and subspecialists, it does not apply to dentists." *Id.* at *6. *Rab* reasoned, as do I, that the medical specialties invoked by Section 41 simply do not relate to dentistry at all. Thus it permitted a physician specializing in infectious disease to testify[13] to a deviation from the standard of care in a dental malpractice case.

*Bashford v. Olawyoe*, No. HNT-L-188-11, 2011 N.J. Super. LEXIS 3163 (N.J. Super. Ct. Law Div. Hunterdon Cnty., Dec. 16, 2011) (unpublished), cited *Rab* and elaborated on it:

> Although defendants are correct that the legislature defined "health care provider" to include dentists, see *N.J.S.A.* 2A:53A-40(e), there is no indication that the American Board of Medical Specialties or the American Osteopathic Association recognizes a dentist as a specialist or subspecialist, which is the clear requirement of *N.J.S.A.* 2A:53A-41(a). As dentistry is not included within the purview of *N.J.S.A.* 2A:53A-41(a), that section is not applicable to the present action.

*Bashford,* 2011 N.J. Super. Unpub. LEXIS 3163 at *7–8.

For all of those reasons, then, I hold that a dental malpractice case is not a medical malpractice case. It is not governed by the stringent AOM eligibility standards of Section 41. Rather, it is subject to the general eligibility standard of Section 27. To Section 27 I therefore turn.

---

[12]    *Meehan* did, however, hold in a dental case that the AOM failed the test of Section 27. I discuss that component of the *Meehan* holding in connection with Section 27, *infra.*

[13]    Recall that Section 41, by its terms, applies equally to AOM affiants and expert witnesses at trial.

17

### 3. Is Dr. Giniger an eligible affiant under Section 27?

The question remaining is whether Dr. Giniger, as a dentist, meets the less stringent standards of Section 27. I hold that he does, and is eligible to submit an AOM in this case.

Under Section 27, the AOM affiant (1) must hold an appropriate "license" and (2) must possess "particular expertise." I discuss those two requirements.

***Appropriate licensed person***. Some congruence is required between the license possessed by the AOM affiant and that possessed by the defendant. Section 27 does not, however, elaborate further. The state Supreme Court has not spoken, and there is little case law of any kind on this specific point. The Appellate Division, however, in a reported opinion written by Judge Sabatino, recently held that the affiant must "possess the *same category of professional license* as the defendant who has been sued." *Hill Int'l, Inc. v. Atl. City Bd. of Educ.*, 106 A.3d 487, 503 (N.J. Super. App. Div. 2014) (emphasis added).[14] By the "same category" of license, *Hill* did not mean the "same license"; it meant "the same category of professionals listed in the sixteen subsections of N.J.S.A. 2A:53A–26.  A perfect match of credentials *within* the same license is not always required." Hill, 106 A.3d at 503 (emphasis added). (The Section 26 list of professions is quoted in full at n.5, *supra*.)

A professional can reasonably expect to be judged by the standards of that profession, and not some other. 106 A.3d at 503. But Section 27 does not cut it any finer than that. The profession listed in Section 26 is the appropriate unit of analysis. Thus *Hill,* a case against an architect, noted that "architect" is a listed profession in Section 26. Another architect would therefore be an appropriate AOM affiant, without regard to any architectural specialties or subspecialties.[15]

---

[14]     The New Jersey Supreme Court has granted leave to appeal from the Appellate Division's decision in *Hill.* 112 A.3d 589, 116 A.3d 1069 (N.J. 2015). As in the case of *Meehan, infra,* I cannot speculate as to the likelihood of affirmance or reversal.

[15]     Conversely, said *Hill,* a nurse is not an appropriate AOM affiant as against a physician, or vice versa; although certain functions may overlap, nursing and medicine are separately listed professions in Section 26. The same is true of an

Dentistry is separately listed as a profession in Section 26. To satisfy the "license" requirement, it suffices that Dr. Giniger is, like Dr. Getzoff, a dentist. Giniger is an appropriate licensed professional, without regard to specialties or subspecialties.

***Particular expertise***. The AOM affiant must also, however, possess "particular expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years." N.J. Stat. Ann. § 2A:53A-27. Particular expertise is an additional, not an alternative, requirement of Section 27. *Hill,* 106 A.3d at 588.

Unlike Section 41, Section 27 does not clearly prescribe the breadth of the area of professional expertise. It refers only to the "general area or specialty involved in the action." That disjunctive formulation appears to be a broad one, and the case law confirms that impression.

Recall that the Section 27 standard is a carryover from 1995; before the 2004 amendments, it applied to all malpractice cases, whether medical or not. Thus the pre-2004 medical malpractice case law can still illuminate post-2004 *non*-medical cases (but not post-2004 medical cases, which now fall under Section 41). That Section 27 standard was (and as to non-medical cases, still is) fairly forgiving:

> Under that [pre-2004] standard, a physician in one field was qualified to render an opinion with respect to the performance of a physician in another if their practices overlapped. *Burns v. Belafsky,* 166 N.J. 466, 480, 766 A.2d 1095 (2001).

*Ryan,* 999 A.2d at 436.

The cited case, *Burns v. Belafsky,* was a pre-2004 medical malpractice case under the general Section 27 standard. There, the plaintiff filed a

---

accountant and a lawyer. And the same goes for an engineer and an architect, the situation that was before the Court in *Hill.* 106 A.3d at 501–02. Strictly speaking, the issue before me is narrower than the one decided by *Hill.* I do not need to decide whether a member of an overlapping, coordinate profession can *never* be an appropriate affiant; for the present case, it is enough to say that licensure in the same profession (dentistry) is *sufficient* to satisfy the "license" requirement.

malpractice complaint against a radiologist, and proffered an AOM from Dr. Salcman, a neurosurgeon. The New Jersey Supreme Court upheld the Appellate Division's decision that Salcman was an acceptable affiant. The Section 27 standard, *Burns* held, is not a same-specialty rule:

> [A]n affidavit of merit need not be executed by an expert with the same qualifications or certifications as the defending physician; that the expert is qualified to supply the required basis for the medical malpractice complaint is sufficient. *See Wacht v. Farooqui,* 312 N.J. Super. 184, 188, 711 A.2d 405 (App. Div. 1998) (holding that merely because defendant in medical malpractice action was board certified diagnostic radiologist did not mean that similarly qualified expert had to execute affidavit of merit against him; "doctor in one field would be qualified to render an opinion as to the performance of a doctor in another with respect to their common areas of practice").

766 A.2d at 1102. Implicit in Section 27 is a recognition that separate specialties may overlap, and that a doctor with five years' relevant practice experience in the area of overlap is qualified to execute an AOM. *Id.* (citing *Wacht, supra* ((citing *Rosenberg by Rosenberg v. Cahill,* 492 A.2d 371, 377–79 (N.J. 1985) (pre-AMS case holding that medical doctor is appropriate expert witness in case of chiropractic malpractice involving x-rays and diagnosis); *Sanzari v. Rosenfeld,* 167 A.2d 625, 629 (N.J. 1961) (pre-AMS case holding that medical doctor is appropriate expert witness in case of alleged malpractice involving dental anesthesia)); *see also Kindig v. Gooberman,* 149 F. Supp. 2d 159, 168 (D.N.J. 2001).

    *Burns* found it "unlikely that a neurosurgeon would not be qualified to discuss various radiological diagnosis techniques, given the need [in his practice] to locate the area and determine the type of surgical intervention needed." 766 A.2d at 1102 (quoting 741 A.2d at 655 (Appellate Division decision on review)). The two specialties overlap in practice, making the neurosurgeon an appropriate affiant under Section 27.

    I find a similar overlap in the practices of Dr. Giniger and Dr. Getzoff.

Getzoff is, of course, an oral surgeon; he, like the defendant radiologist in *Burns,* has a specialty. Dr. Giniger, however, is well credentialed and qualified in the dental field, and he has been practicing for 30 years. He, like the neurosurgeon in *Burns,* practices in an area that overlaps with that of the defendant. As a general dentist, Dr. Giniger is qualified to extract teeth, the procedure that is the subject of Szemple's claim. Giniger has extracted teeth as part of his 30-year practice, and his residency at Newark Beth Israel Hospital focused on tooth extraction. Indeed, Dr. Giniger was in 1984-85 a staff dentist at the very state prison where Szemple was confined, and he performed extractions there. (Declaration of Martin Giniger, ECF No. 85-2 ¶¶ 5-9) Like Dr. Salcman in *Burns,* Dr. Giniger is not in the same specialty as the defendant, but he has for many years practiced the procedure—tooth extraction—in which the malpractice allegedly occurred.

The strict Section 41 same-specialty requirement, *if* it applied, would not permit an AOM from a specialist in another field who happened to be qualified to perform the same procedure. *See Nicholas, supra,* 64 A.3d at 551. But Section 41 does not apply. Dr. Giniger's qualification to perform extractions, and his long experience in doing so, demonstrate that he meets the more practice-based AOM standard of Section 27.

Defendants cite *Meehan v. Antonellis,* 2014 WL 5800811 (N.J. Super Ct. App. Div. November 10, 2014), *certif. granted,* 110 A.3d 931 (N.J. 2015) (discussed as to Section 41 at pp. 16–17, *supra*). There, in an action against an orthodontist, the trial court had excluded an AOM signed by a prosthodontist and sleep apnea expert. *Meehan,* disagreeing with the trial court, held that the medical malpractice standard of Section 41 did not apply in that dental case. Nevertheless, *Meehan* opined that the Section 27 standards were similar and would require the same result: "Nonetheless, they [*i.e.,* the Section 41 standards] are consistent with the limitations found in the AMS, which, as noted, mandates that experts in other professional malpractice actions possess particular expertise in the specialty involved in the action." *Id.* Seemingly

21

applying Section 27 and adverting to "the statutory criteria of the AMS," *Meehan* upheld the exclusion of the AOM. *Id.* at *5.

The New Jersey Supreme Court has granted certification in *Meehan,* but argument has not yet been held.[16] That is a set of tea leaves I cannot read; whether the grant of certification bespeaks disapproval of, support for, or general concern about, the *Meehan* holding is unknown, at least to me.

Instead, I simply state that I find *Meehan* unpersuasive as to the application of Section 27 to a dental malpractice case. For the reasons expressed above, I do not think that the Section 27 standards are similar to those under Section 41, or that the Section 41 standards have any application here.

Under Section 27, Dr. Giniger is eligible to act as AOM affiant in this case.[17]

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss the complaint for failure to file a compliant AOM is denied.

Dated: February 8, 2016

HON. KEVIN MCNULTY, U.S.D.J.

---

[16]    The question presented is "Was plaintiff's dental malpractice action properly dismissed for failure to comply with the Affidavit of Merit statute (N.J. STAT. ANN. § 2A:53A-26 to -29)?" (No. A-45-14, www.judiciary.state.nj.us/calendars/sc_appeal.htm)

[17]    Because I so hold, I do not reach other contentions: for example, that an AOM or a late AOM should be excused, that there is substantial compliance, or that the AOM requirement does not apply because the alleged negligence is a matter of "common knowledge."